UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>JUAN SILVA,<br><br>            Defendant. | Case No. 14-CV-04848-LHK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 14 |

Plaintiffs Dish Network LLC, EchoStar Technologies LLC, and NagraStar LLC (collectively, "Plaintiffs") move for default judgment against Defendant Juan Silva ("Silva"). ECF No. 14 ("Mot."). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and therefore VACATES the hearing set for May 14, 2015. For the reasons set forth below, Plaintiffs' motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

#### 1. Plaintiffs' Satellite Television Programming

Plaintiff Dish Network LLC ("Dish Network") is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the

United States, Puerto Rico, and the U.S. Virgin Islands through a direct broadcast satellite system. ECF No. 1 ("Compl.") ¶ 10.  Dish Network uses high-powered satellites to broadcast movies, sports, and general entertainment services to consumers who have been authorized to receive these services after payment of a subscription fee. *Id.* ¶ 11.  Dish Network purchases distribution rights for the content it broadcasts from providers such as network affiliates, motion picture distributors, sports leagues, etc. *Id.* ¶ 12.  The content distributed by Dish Network is copyrighted, and Dish Network is required by the copyright holders to protect the works from unauthorized distribution. *Id.* ¶ 13.  Thus, Dish Network broadcasts television programming in an encrypted, or scrambled, format to limit its distribution only to those authorized to receive the copyrighted programming. *Id.* ¶ 17-19.

Plaintiff EchoStar Technologies LLC ("EchoStar") provides set-top box receivers, satellite dish antennas, and other digital equipment for the Dish Network system. *Id.* ¶ 15.  Plaintiff NagraStar LLC ("NagraStar") provides smart cards and other proprietary security technologies for use in conjunction with EchoStar's receivers. *Id.*  The security technologies provided by NagraStar form a conditional access system for the Dish Network system. *Id.*  Specifically, each receiver and smart card is assigned a unique serial number that is used by Dish Network when activating the equipment. *Id.* ¶ 16.  These unique serial numbers allow Dish Network to ensure that the equipment only decrypts programming and services that the customer is authorized to receive as part of their subscription package. *Id.*  Dish Network is therefore able to "turn on" and "turn off" programming a customer has ordered, cancelled, or changed. *Id.* ¶ 17.  Dish Network is also able to control which users are able to descramble the programming and services broadcast via Dish Network's broadcast satellite system. *Id.*  Together, the EchoStar receiver and NagraStar smart card convert Dish Network's encrypted satellite signal into viewable programming that can be displayed on a television of an authorized viewer. *Id.* ¶ 19.

### 2. Piracy of Dish Network Programming

Over the years, many devices and methods have been used by individuals to illegally decrypt, or "pirate," television programming. *Id.* ¶¶ 20-25.  The black market in piracy devices

2

Case No. 14-CV-04848-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

represents a multimillion dollar industry in the United States. *Id.* ¶ 20. One method of pirating network programming involves Internet key sharing, or "IKS." *Id.* ¶ 22. At a high level, IKS allows users to share the "control words" generated by authorized smart cards which are in turn used by a receiver to decrypt Dish Network's satellite signals. *See id.* ¶¶ 23-25. With IKS, therefore, unauthorized users are able to decrypt Dish Network's encrypted satellite signal and view programming without paying a subscription fee to Dish Network. *Id.* ¶ 24-25.

A service called NFusion Private Server ("NFPS") is a subscription-based IKS service. *Id.* ¶ 25. Members of this service pay an access fee and are able to obtain, over the internet, the control words necessary to decrypt Dish Network's satellite signal. *Id.* Francis Philip ("Philip"), known as "Vgiddy," sold subscriptions to NFPS. *Id.* ¶ 26. In exchange for a fee, Philip would provide a NFPS subscriber with a passcode to a server whereby the NFPS subscriber could obtain the proprietary control words to decrypt Dish Network's programming. *Id.* ¶ 25. Dish Network acquired Philip's business records. *Id.* ¶ 26.

### 3. Silva's Conduct

According to Philip's records, Silva purchased multiple subscriptions to NFPS between March and June 2012, and again in March 2013. *Id.* ¶ 26. Silva used an unauthorized receiver loaded with piracy software to access the NFPS service. *Id.* ¶ 27. Accordingly, each time Silva's unauthorized receiver was tuned to an encrypted Dish Network channel, Silva's receiver would retrieve the control word for that channel from the NFPS service. *Id.* Using this received control word, Silva's receiver could then decrypt Dish Network's encrypted satellite signal. *Id.* Once decrypted, Silva could then view Dish Network programming without having to purchase a subscription from Dish Network. *Id.*

Philip's records also link Silva to certain posts made on an internet forum. Mot. at 7. These posts reveal that Silva used two receivers in connection with the NFPS service and that his NFPS service was "working fine" and that he was able to watch "one or 2 movies all the time." *Id.* at 7-8. Additional posts suggest that Silva had previously been able to watch Ultimate Fighting Championship events using this NFPS service. *Id.*

### B. Procedural History

On October 31, 2014, Plaintiffs filed their complaint in the instant litigation alleging that Silva's conduct violated the Digital Millennium Copyright Act, Federal Communications Act, and Electronic Communications Privacy Act. Compl. ¶¶ 29-41. Silva was personally served on November 25, 2014 at 4:44 pm. ECF No. 11. Silva's answer was therefore due twenty-one days later, on December 16, 2014. Fed. R. Civ. P. 12(a)(1)(A)(i). Silva did not file an answer. On January 6, 2015, Plaintiffs filed a motion requesting that the clerk enter default. ECF No. 12. The clerk entered default on January 14, 2015. ECF No. 13. On January 27, 2015, Plaintiffs filed the instant Motion for Default Judgment on Plaintiffs' third cause of action, alleging that Silva's conduct violated the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a), 2520 ("ECPA"). ECF No. 14.

## II. LEGAL STANDARD

Pursuant to Rule 55(b)(2), the court may enter a default judgment when the clerk, under Rule 55(a), has previously entered the party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir.2002); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498 (quotation omitted).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

4
Case No. 14-CV-04848-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).

### III. DISCUSSION

#### A. Jurisdiction

##### 1. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiffs' claim under the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.* because the statute provides a civil cause of action for any person whose "electronic communication is intercepted" and presents an issue of federal law. 18 U.S.C. § 2520 ("[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate."); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States.").

##### 2. Personal Jurisdiction

There is no applicable federal statute governing personal jurisdiction in this case. Therefore, California state law applies. *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)). California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Accordingly, as long as the requirements of the Due Process Clause of the United States Constitution are satisfied, this Court's exercise of personal jurisdiction over Silva is proper. *See Panavision*, 141 F.3d at 1320. "Due process requires that a defendant have minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

*Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction." *Panavision*, 141 F.3d at 1320.

The Supreme Court recently stated that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations v. Brown*, 131 S.Ct. 2846, 2853 (2011). The Court concludes that the Complaint adequately alleges that Silva is domiciled in California. Specifically, Plaintiffs allege in the Complaint that Silva "resides in and regularly conducts business in the State of California" and that Silva "is an individual that resides at 1130 Kimberly Ct., Hollister, California 95023." Compl. ¶¶ 2, 8. Moreover, Silva was personally served at this address on November 25, 2014, at 4:44 p.m. ECF No. 11. Accordingly, the Court concludes that general jurisdiction over Silva is proper.

### B. Plaintiffs' Claim for Damages

Upon review of Plaintiffs' Complaint, Motion for Default Judgment, and supporting papers, the Court concludes that Plaintiffs have sufficiently alleged violations of the ECPA, and is entitled to monetary and injunctive relief for the reasons stated below. Accordingly, factors two through four of *Eitel*—the substantive merits of plaintiffs' claim, the sufficiency of the complaint, and the amount of money at stake—favor entry of default judgment. *See Eitel*, 782 F.2d at 1471.

Plaintiffs adequately plead a claim for relief under the ECPA, specifically under 18 U.S.C. § 2511(1)(a). The ECPA makes it unlawful to "intentionally intercept" an "electronic communication," such as an encrypted satellite broadcast of television programming. *See id.*; *see also* § 2510(12). According to the complaint, Silva purchased multiple subscriptions to the NFPS service. Compl. ¶ 26. Silva accessed the NFPS service by using an unauthorized receiver loaded with piracy-enabling software. *Id.* ¶ 27. Each time Silva tuned his receiver to an encrypted Dish Network channel, the control word for that specific channel was requested from the NFPS server. *Id.* In response, the NFPS server returned the control word to Silva's receiver, which used the control word to decrypt Dish Network's encrypted satellite signal, permitting Silva the ability to view Dish Network's programming without authorization. *Id.* Silva's interception was the

6

Case No. 14-CV-04848-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

product of several deliberate acts directed at exploiting the NFPS service, and therefore was intentional and not inadvertent. *Id.* at ¶¶ 26-28, 39-41.

Plaintiffs seek statutory damages of $10,000 pursuant to 18 U.S.C. § 2520(c)(2). Under this section, Plaintiffs may recover the greater of either (a) actual damages, (b) statutory damages of $100 per day for each day of violation, or (c) statutory damages of $10,000. *Id.* Because Silva has defaulted and not participated in this litigation, Plaintiffs are unable to establish either (a) actual damages or (b) the number of days that Silva was in violation of the ECPA. Accordingly, Plaintiffs seek to recover statutory damages of $10,000 pursuant to 18 U.S.C. § 2520(c)(2)(B) ("the court may assess as damages . . . statutory damages of . . . $10,000."). "Because Congress has expressly authorized a court to award damages of $10,000, the Court cannot conclude that this amount is per se unreasonable such that it would preclude or weigh against the entry of default judgment. This factor weighs in favor of default judgment." *Dish Network LLC v. Gonzalez*, No. 13-cv-107-LJO-SKO, 2013 WL 2991040, at *4 (E.D. Cal. June 14, 2013). Accordingly, the Court awards Plaintiffs statutory damages of $10,000.

### C. Plaintiffs' Claim for Injunctive Relief

Plaintiffs also seek permanent injunctive relief pursuant to 18 U.S.C. § 2520(b)(1). Under the ECPA, the Court may award "such preliminary and other equitable or declaratory relief as may be appropriate." *Id.* The Supreme Court has held that a permanent injunction is warranted where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). For the reasons stated in Plaintiffs' Motion, the Court agrees that Plaintiffs are entitled to permanent injunctive relief.

Plaintiffs seek to enjoin "Defendant, and anyone acting in active concert or participation with Defendant" from:

> A. circumventing or assisting others to circumvent DISH Network's security system, or otherwise intercepting or assisting others to intercept DISH Network's satellite signal;
>
> B. testing, analyzing, reverse engineering, manipulating, or extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system.

ECF No. 14-7 at 3.  The Court concludes that the terms of the permanent injunction, as proposed by Plaintiffs, are sufficiently precise and that the scope of the injunction is adequately tailored "to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may be fairly anticipated from the defendant's conduct in the past." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990).  Accordingly, Plaintiffs' request for permanent injunctive relief is granted.

### D. Remaining *Eitel* Factors

The Court concludes that the remaining enumerated *Eitel* factors are consistent with entry of default judgment in this case.  Regarding the possibility of a dispute concerning material facts (factor 5), the alleged facts are readily verifiable through records, and there is a low likelihood that Silva could successfully contest them.  *See also TeleVideo*, 826 F.2d at 917-18 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (citation omitted)).  As to whether default was due to excusable neglect (factor 6), Plaintiffs provided sufficient proof of service, *see* ECF No. 11, Silva never responded or filed any papers, and no circumstances indicate excusable neglect by Silva.  Finally, regarding the possibility of prejudice to Plaintiffs and public policy concerns (factors 1 and 7), adjudication on the merits is not possible because Silva has not participated in this case, and Plaintiffs may have no recourse if default is denied.  Accordingly, no relevant factors preclude default judgment in this situation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is GRANTED.  The Clerk shall enter judgment against Silva in accordance with this order, specifically:

- $10,000 statutory damages for violations of 18 U.S.C. §§ 2155(1)(a) and 2520(a), and

- immediate permanent injunctive relief enjoining Mr. Juan Silva, and anyone acting in active concert or participation with, or at the direction or control of Mr. Silva, from (1) circumventing or assisting others to circumvent DISH Network's security system, or otherwise intercepting or assisting others to intercept DISH Network's satellite signal and (2) testing, analyzing, reverse engineering, manipulating, or extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system.

The Court retains jurisdiction over this action for two years for the purpose of enforcing this final judgment and permanent injunction. The clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: May 12, 2015

_____
LUCY H. KOH
United States District Judge